145 So.2d 197

**Rose MONTE et al.**

v.

**Ross MONTALBANO et al.**

**6 Div. 405.**

Supreme Court of Alabama.

Sept. 20, 1962.

7

Knabe & Nachman, Montgomery, Oberdorfer & Oberdorfer, Birmingham, and Huey, Stone & Patton, Bessemer, for appellants.

8

McEniry, McEniry & McEniry, Besse-
mer, for appellees.

COLEMAN, Justice.

This is an appeal by cross-respondents from a decree of the circuit court, in equity, which denied relief on a bill of complaint and granted the relief prayed for in a cross bill. The cross bill sought a sale of real estate for division of the proceeds among cross-complainants and one of the cross-respondents as tenants in common. The decree was rendered on testimony heard ore tenus.

The cross-complainants and one of the cross-respondents, namely, Rose Monte, are the children and heirs of Caterino Montalbano who died intestate in 1928. Rose Monte and the other cross-respondent, Tony Rose, claim that they have acquired the entire title to the real estate by adverse possession. The only issue is whether or not the cross-respondents, Rose Monte and Tony Rose, have acquired title by adverse possession. The court resolved this issue against cross-respondents. We think the court was correct.

The suit commenced by statutory bill to quiet title. The appellants are the complainants in the bill, i. e., Rose Monte and Tony Rose, who alleged that they purchased the suit property in 1944 from Martin and Deason. Complainants alleged that they have been in actual, peaceable possession since December 15, 1944, and have assessed the property for taxation in their own names and paid the taxes throughout the period. The property is a lot in Bessemer.

Complainants further aver that the lot was sold for taxes in 1939 on an assessment to Caterino Montalbano who died intestate in 1928. Caterino Montalbano owned the property at the time of her death. She left surviving her a husband and seven (now six) children. The complainant (cross-respondent), Rose, is one of the children. The respondents (cross-complainants) are the other children of Caterino. Her surviving husband, Louis, executed a quit claim deed to complainants. This deed is dated December 18, 1944. Louis died December 3, 1947. Suit was begun in January, 1958.

In the cross bill, it is alleged that in 1939 the lot was sold for taxes to the state. In 1943, the state sold to Martin. Martin later sold one-half interest to Deason. By deed dated December 15, 1944, Martin and Deason conveyed to Rose Monte and Tony Rose, the cross-respondents. Tony is the brother of Caterino and uncle of Rose and the cross-complainants. Since the death of Louis Montalbano in 1947, cross-respondents have collected rents, allegedly far in excess of the amount of taxes, and have made no accounting to cross-complainants. The cross-complainants offered to do equity.

In answer to the cross bill, cross-respondents assert adverse possession since December 15, 1944, and that they have assessed the property for and paid taxes thereon in their own names; that their possession has been exclusive and this exclusive claim of ownership has been known to cross-complainants, "or should have been known to them by their exercise of reasonable diligence"; and that the cross-respondents have collected rents and never made accounting, or been called on to account, during all said period. Cross-respondents deny that cross-

complainants are tenants in common or have any interest in the lot.

Demurrer to the cross bill was overruled, and appellants complain of this ruling. In argument, however, appellants have argued many assignments together and we do not understand that the ruling on demurrer was incorrect if the final decree be correct. Accordingly, without separate attention to the demurrer, we discuss the proposition argued by appellant. The cross bill was sufficient, we think, under Coppett v. Monahan, 267 Ala. 572, 103 So.2d 169.

In the final decree the court found that the possession of Rose Monte was for and on behalf of all the tenants in common, that no ouster of the cross-complainants ever took place, nor was there any holding of adverse possession by cross-respondents. The court decreed that the cross-complainants and the cross-respondent, Rose Monte, owned the lot as tenants in common, and that cross-respondent, Tony Rose, has no title or interest in the property. Sale for division was ordered.

The decree recites that since the death of the life-tenant in December, 1947, appellants have collected and retained rents in the amount of $10,189.00, which far exceeds the amounts by them expended for improvements, taxes, and other expenditures in regard to the property, and that an accounting therefor substantially favors appellees. Appellees, however, did not insist on a judgment for rents collected and none is rendered or to be rendered.

Cross-respondents assign the decree as error. There are fifty-nine assignments of error. Appellants have argued four propositions in support of their insistence for reversal, and these propositions, we think, fairly present the matters complained of.

The real question in the case is whether or not cross-complainants have lost the title which they inherited from their mother, Caterino Montalbano, as the result of adverse possession of the property by Rose Monte and Tony Rose.

Appellants argue first that they have title by the three-year statute, Title 51, § 295, Code 1940.

Second, appellants argue that the court erroneously treated Tony Rose as a cotenant and erroneously applied standards and principles applicable to adverse possession among cotenants.

Third, appellants argue that, even if they were cotenants of appellees, the testimony shows that appellants were entitled to prevail.

Fourth, appellants argue that appellees are not entitled to recover because they are guilty of laches.

■ The tax sale in 1939 is admittedly void. Land cannot be assessed for taxation as property of a deceased owner or of his estate, and a sale founded on such an assessment is a nullity. Jackson v. King, 82 Ala. 432, 3 So. 232; Webb v. Griffin, 243 Ala. 468, 10 So.2d 458.

■ Inasmuch as Caterino Montalbano died intestate, her surviving husband, Louis, was entitled "to the use of the realty during his life." Title 16, § 12, Code 1940. Cross-respondents held a deed from the life-tenant, Louis, dated December 18, 1944. This is three days after the date of the deed to cross-respondents from Martin and Deason which date was December 15, 1944. Both deeds were filed for record in the office of the Judge of Probate on the same day, December 18, 1944. Both deeds are recorded in the same deed book, one deed on page 519, and the other on page 520. Whether cross-respondents held under the deed from the life-tenant or under the deed from the purchasers from the state, or both, is immaterial. Until the termination of the life estate by the death of Louis on December 3, 1947, there could be no adverse holding against cross-complainants, the remaindermen. The statute of limitations never runs against the remaindermen or reversioner during the existence of the life estate, nor can there be any adverse posses-

sion as to him. Pickett v. Doe ex dem. Pope, 74 Ala. 122; Head v. Taylor, 272 Ala. 241, 130 So.2d 4.

▮ Rose Monte is a tenant in common with respondents. The possession of one tenant in common is prima facie presumed to be the possession of all, and it does not become adverse to the cotenants unless they are actually ousted, or, short of this, unless the adverse character of the possession of one is actually known to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character. Ashford v. Ashford, 136 Ala. 631, 34 So. 10.

▮ The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75, and cases there cited.

▮▮ Mere lapse of time and payment of taxes by one cotenant are not, in tenancies in common, necessarily acts of disseisin. There must be an entry and continuous exclusive possession under a claim of exclusive right. Possession and use by one tenant in common will not, of itself, repel the presumption that the possession is that of all the tenants in common. The intent to hold as exclusive owner, repudiating the rights of cotenants, must be established by proof and brought home to them. The redemption from a tax sale by one cotenant inures to the benefit of all cotenants. Coppett v. Monahan, 267 Ala. 572, 103 So. 2d 169.

▮ This record is utterly devoid of evidence to show that knowledge of the adverse character of the possession of Rose Monte was ever brought home to the five (now four) cotenants who appear to be non-residents of this state. The burden was on appellants to present this proof and they have failed to support the burden. The result is that the circuit court was not in error in concluding that Rose Monte had

not acquired title against her cotenants by adverse possession.

We have not overlooked the evidence as to Ross Montalbano, the brother and cotenant who resided in Jefferson County. There is testimony that he was told, some twelve years before suit commenced, that Rose and Tony owned the property. Ross, however, denied that he had been told. The court, who heard him testify ore tenus, will not be put in error for taking his testimony as true.

Ross admitted that he knew that the property had been sold for taxes. There is no evidence that any other cross-complainant had such knowledge. There is no evidence that Ross acted for the other cross-complainants or that they are chargeable with the knowledge Ross possessed.

▮ Appellants contend that the cotenants were bound to come in within a reasonable time and contribute to the cost of redeeming from the tax sale. Five (now four) cotenants had no knowledge of the tax sale, so far as the record shows. On the authority of Markstein v. Schilleci, supra, we are of opinion that the non-resident cotenants cannot be held guilty of laches for failure to contribute. Under these circumstances and § 276, Title 51, Code 1940; Finerson v. Hubbard, 255 Ala. 551, 52 So.2d 506; and Bell v. Williams, 256 Ala. 298, 54 So.2d 582, we are of opinion that the court did not err in holding that the rights of Ross were not barred by laches for his failure to offer to contribute at an earlier date.

Appellants argue further that whatever may be the situation between Rose Monte and her cotenants, the uncle, Tony Rose, was a stranger to the cotenancy and it was not necessary, in order to make his holding adverse, that knowledge of the adverse character of his possession be brought home to cross-complainants.

▮ We think the answer to this contention is that the possession of Tony

Rose was not adverse to cross-complainants because the possession of Tony Rose was never exclusive. Actual possession, continuous and under claim of right or claim of ownership, for 25 or 30 years, is still not adverse possession unless it is exclusive. Bowles v. Lowery, 181 Ala. 603, 62 So. 107.

Tony Rose held at all times as cotenant of Rose Monte. As we have undertaken to show, the court could find that Rose Monte held as cotenant of cross-complainants. The holding of Tony Rose, on such a finding, was not exclusive and, therefore, was not adverse.

The situation of Tony Rose has similarity to that of a stranger to the title who, jointly with one who had a right to redeem, redeemed from the purchaser at a mortgage foreclosure sale. This court said that the jointly redeeming stranger took the title as a trustee in invitum, and this joint redemption inured to the benefit of the cotenants of the one who had a right to redeem. Braly v. Polhill, 231 Ala. 633, 166 So. 419. Tony Rose, we think, was a trustee in invitum for the cotenants of Rose Monte.

Appellants argue that because Tony Rose put up all the money for the purchase from Martin and Deason, Rose Monte holds as resulting trustee for Tony Rose. Whether Rose Monte is such trustee or not is of no concern to the cross-complainants. Rose Monte did not testify. We do not see the relevancy of the principles which have to do with resulting trusts. The bill of complaint avers that both respondents purchased from Martin and Deason.

On the question of laches, we think the court could find cross-complainants not guilty. This court has said:

"Where the question of laches is presented, the facts and circumstances of each case govern the court in the exercise of the discretion thereby invoked for the determination of the inquiry. Waddail v. Vassar et al., 196 Ala. 184, 72 So. 14.

"It has often been declared that mere delay which has resulted in no disadvantage to another or that has not operated to bring about changes in conditions or circumstances, in consequence of which 'there can be no longer a safe determination of the controversy,' will not serve to bar complainant's right or remedy. Craig v. Root, 247 Ala. 479, 25 So.2d 147, 150, and cases cited." Ellis v. Stickney, 253 Ala. 86, 95, 42 So.2d 779, 787.

Cross-respondents have been amply reimbursed for the money they spent on the property. Injury to them by the delay does not appear.

We are of opinion that error has not been shown.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.